IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, as Subrogee of, <br><br> Plaintiff, <br><br> v. <br><br> INTERLINE BRANDS, INC., LINX LTD., and WATTS WATER TECHNOLOGIES, INC., <br><br> Defendants. | 4:13CV3037 <br><br> MEMORANDUM AND ORDER ON WATTS WATER TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION |

On January 22, 2013, State Farm Fire and Casualty Company a/s/o James Langtry (State Farm) filed a two-count complaint against Interline Brands, Inc. (Interline); Watts Water Technologies, Inc. (Watts Water Technologies); and Linx Ltd. (Linx) (collectively, "the defendants"). (See Notice of Removal, Ex. A, Compl., ECF No. 1-1.) Now before me is Watts Water Technologies' Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 11.) For the following reasons, Watts Water Technologies' motion will be denied.

## I.   BACKGROUND

State Farm issued an insurance policy that, at relevant times, covered the residence and personal property of James Langtry, who was a resident of Lincoln, Nebraska. (Notice of Removal, Ex. A, Compl. ¶¶ 1, 3, ECF No. 1-1.) Langtry used

1

"a 12" DuraPro® stainless steel braided supply line equipped with a 3/8" nickel-plated brass compression nut and crimp sleeve fitting" (the Product) to connect a toilet to a water supply line at his residence. (Id. ¶¶ 7-8.) The Product allegedly failed on January 17, 2011, "due to material fatigue and subsequent fracture of the polymeric coupling unit." (Id. ¶ 9.) The Product's failure caused Langtry's residence to be flooded with water, and he incurred $188,016.36 in damages. (Id. ¶¶ 9, 15, 20.)

State Farm alleges that the defendants are all "foreign corporation[s] doing business in Nebraska." (Id. ¶¶ 4-6.) It alleges further that the defendants "were in the business of selling, designing, distributing, and manufacturing plumbing parts and products," including the Product at issue in this case. (Id. ¶ 7.) It seeks to hold the defendants liable for Langtry's damages on theories of negligence and strict liability. (See id. ¶¶ 11-21.)

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff must state sufficient facts in the complaint to support a reasonable inference that [the] defendant[] may be subjected to jurisdiction in the forum state." Steinbuch v. Cutler, 518 F.3d 580, 585 (8th Cir. 2008) (citing Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)). Moreover, after jurisdiction has been controverted by the opposing party, "the plaintiff bears the burden of proving facts supporting personal jurisdiction." Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090 (8th Cir. 2008) (citing Dever, 380 F.3d at 1072). The plaintiff "need[] only make a prima facie showing of jurisdiction" to satisfy this burden. Id. (citing Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991)). "The plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but

by the affidavits and exhibits presented with the motions and opposition thereto." Id. (quoting Dever, 380 F.3d at 1072). When considering these affidavits and exhibits, the court must view the facts in the light most favorable to the plaintiff and resolve all factual conflicts in its favor. E.g., Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th Cir. 2003); Dakota Indus., Inc., 946 F.2d at 1387.

### III.   ANALYSIS

Watts Water Technologies argues that State Farm's complaint must be dismissed because State Farm has failed to show that Watts Water Technologies has the requisite "minimum contacts" with the State of Nebraska to support personal jurisdiction. (See Def.'s Br. at 4-5, ECF No. 12.)

"A federal court may exercise jurisdiction 'over a foreign defendant only to the extent permitted by the forum state's long-arm statue and by the Due Process Clause of the Constitution.'" Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090 (8th Cir. 2008) (quoting Dakota Indus., Inc. v. Ever Best Ltd., 28 F.3d 910, 915 (8th Cir. 1994)). Nebraska's long-arm statute confers jurisdiction "to the fullest extent permitted by the United States Constitution"; therefore, my analysis need only address whether the exercise of personal jurisdiction over Watts Water Technologies would violate the Due Process Clause. Stanton v. St. Jude Medical, Inc., 340 F.3d 690, 693 (8th Cir. 2003) (citing Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 612 (8th Cir. 1994)). See also Wagner v. Unicord Corp., 526 N.W.2d 74, 77-78 (Neb. 1995); Neb. Rev. Stat. § 25-536(2).

Due process requires that a non-resident defendant have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit [in that state] does not offend 'traditional notions of fair play and substantial justice.'"

International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). See also Miller, 528 F.3d at 1090; Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004). "The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction." Dever, 380 F.3d at 1073. "Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." Id. (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984)). "In contrast, specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." Id. (citing Hall, 466 U.S. at 414). Under either of these two theories, the defendant must have committed "some act by which the defendant purposely avail[ed] itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). See also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985). "This purposeful availment must be sufficient to provide the defendant with fair warning that his activities might result in his being haled into court in that jurisdiction." Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006). "Once it has been decided that a defendant purposefully established minimum contacts within the forum [s]tate, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corp., 471 U.S. at 476 (quoting International Shoe Co., 326 U.S. at 320). See also Dever, 380 F.3d at 1073.

  In light of the foregoing principles, the Eighth Circuit "instruct[s] courts to

consider the following factors when resolving a personal jurisdiction inquiry: (1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Dever, 380 F.3d at 1073-74 (internal quotation marks, brackets, and citation omitted). See also Sybaritic, Inc. v. Interport Intern., Inc., 957 F.2d 522, 524 (8th Cir. 1992) (explaining that this five-factor framework "incorporates the notions of both 'minimum contacts' and 'fair play and substantial justice'"). The first three factors are given more weight than the remaining factors, but factor three may be inapplicable if jurisdiction is predicated on the theory of general jurisdiction. Dever, 380 F.3d at 1074.

In support of its motion to dismiss, Watts Water Technologies submitted evidence showing that it is a Delaware corporation with its principal place of business in Massachusetts. (Def.'s Index, Ex. 1 Hoffman Aff. ¶¶ 3, ECF No. 13-1.) It has never been a Nebraska corporation, has never been registered to do business in Nebraska, has no registered agent in Nebraska, has never paid taxes in Nebraska, owns no property in Nebraska, has no branches or offices in Nebraska, and has never had phone listings or bank accounts in Nebraska. (Id. ¶ 4.) In addition, Watts Water Technologies claims that it "did not manufacture, process, service, distribute, or sell" the Product that allegedly caused damage to Langtry's property; it "does not manufacture, process, service, distribute, or sell any coupling nuts or water supply lines"; and it "does not manufacture, process, service, distribute, or sell any products in Nebraska." (Id. ¶¶ 5-6.) Watts Water Technologies asserts that in light of these facts, "no basis exists for the exercise of personal jurisdiction over Watts Water in Nebraska." (Def.'s Br. at 5, ECF No. 12.)

In response, State Farm argues that because Watts Water Technologies has used "a robust distribution network to deliver its products into the stream of commerce with the expectation that the products would be purchased by consumers in the forum state," it is subject to this court's jurisdiction. (Pl.'s Response Br. at 1-2, ECF No. 17 (citing Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610 (8th Cir. 1994); Vandelune v. 4B Elevator Components Unlimited, 148 F.3d 943 (8th Cir. 1998)).) State Farm also argues that Watts Water Technologies did, in fact, manufacture the Product. (See generally id.) In support of its arguments, State Farm refers me to a fourteen page set of documents that appear to show that "Watts," which is described as "A Watts Water Technologies Company," has produced ten different series of "connectors," including four series of water supply connectors for toilets. (Pl.'s Br., Ex. A, ECF No. 17.) State Farm also refers me to exhibits purporting to show that "Watts" maintains a list of 37 sales representatives, three of which list Nebraska as their "territories." (See id. Exs. B-C.) Finally, State Farm has submitted a document that appears to be a four-page excerpt from Watts Water Technologies' 2011 Securities and Exchange Commission Form 10-K. (See id. Ex. D.) This document states, "Our 'Water by Watts' strategy is to be the leading provider of water quality, water conservation, water safety and water flow control products for the residential and commercial markets in North America and Europe with a presence in Asia." (Id. at 2.) It adds that one of Watts Water Technologies' product lines includes "[r]esidential and commercial flow control products," which "includes products typically sold into plumbing and hot water applications." (Id. at 3.) It continues, "Our products are sold to wholesale distributors and dealers, major DIY chains and original equipment manufacturers." (Id.) "For product sales, we rely primarily on commissioned manufacturers' representatives, some of which maintain

a consigned inventory of our products. These representatives sell primarily to plumbing and heating wholesalers or service DIY store locations in North America. We also sell products for the residential construction and home repair and remodeling industries through DIY plumbing retailers, national catalog distribution companies, hardware stores, building material outlets and retail home center chains and through plumbing and heating wholesalers." (Id. at 4.) Significantly, Watts Water Technologies does not dispute the authenticity of any of the documents submitted by State Farm.

"Stream of commerce" is "a type of specific jurisdiction" that may be exercised when a foreign manufacturer "pour[s] its products into regional distributors" with the expectation that its products will make their way into the forum state. Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 612, 615 (8th Cir. 1994). See also Vandelune v. 4B Elevator Components Unlimited, 148 F.3d 943, 947-48 (8th Cir. 1998). Under these circumstances, it cannot be said that the manufacturer's product ended up in the forum state "on an 'attenuated, random, or fortuitous' basis," or that the manufacturer "has not purposefully directed its activities at residents of that [s]tate." Vandelune, 148 F.3d at 948. Rather, the manufacturer has "purposefully reaped the benefits of the laws of" the state "for due process purposes." Id. Personal jurisdiction may be exercised over such a manufacturer even if it has no office, agents, employees, or property in the forum state, and does no advertising or direct business solicitation in the forum state. E.g., id.; Barone, 25 F.3d at 611.

State Farm's documents permit a reasonable inference that Watts Water Technologies manufactured the Product and purposefully directed its business activities at the residents of Nebraska by selling the Product through a network of commissioned representatives that covers Nebraska. Thus, State Farm has made a

prima facie showing of jurisdiction under the "stream of commerce" theory.

In reply, Watts Water Technologies argues that "[f]or all intents and purposes, this case deals with three separate and distinct Watts entities: Watts Water Technologies, Inc., Watts Regulator Co.[,] and Watts Plumbing Tech (Taizhou) Co. Ltd." (Def.'s Reply Br. at 2, ECF No. 20 (citation omitted).) It claims that "the subject products" were manufactured in China by "Taizhou Shida," which is "now known as Watts Plumbing Tech (Taizhou) Co. Ltd" (hereinafter "Taizhou"). (Id. at 3.) It adds that Taizhou is the fully-owned subsidiary of parent company Watts Regulator Co., which in turn is the fully-owned subsidiary of the defendant, Watts Water Technologies. (Id. at 2-3.) The defendant states,

> Watts Water Technologies had absolutely no part in designing, manufacturing, labeling, selling, marketing, or distributing any flexible connectors or coupling nuts–let alone heading a distribution network that provided products to Nebraska. Its only relationship to the subject products is that it is the parent company of Watts Regulator Co., which is now the parent company of [Taizhou]–the company that manufactured the subject products.
>
> Given that Watts Water Technologies did not manufacture or distribute the subject products, the only way it could potentially be liable for damages caused by the subject products is through and alter ego/piercing the corporate veil argument. However, the Plaintiff has not alleged an alter ego cause of action.

(Id. at 4 (footnote omitted).) It also claims that "an alter ego argument against Watts Water Technologies or Watts Regulator Co. would ultimately fail due to the fact that [Taizhou] is a fully funded and independent company." (Id. at 4 n.3.)

Watts Water Technologies' argument is not responsive to the "stream of commerce" theory relied upon by State Farm; rather, it introduces a new theory suggesting that because certain corporate subsidiaries' actions cannot not be

8

attributed to Watts Water Technologies through an agency or "alter ego" theory, personal jurisdiction cannot be exercised over Watts Water Technologies in Nebraska. See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 596 (8th Cir. 2011) ("[T]his inquiry–whether a foreign corporation has established minimum contacts with the forum state through 'pour[ing] its products into regional distributors,'–should be kept conceptually separate from the question of whether a subsidiary's contacts with the forum state should be attributed to a foreign parent corporation through an agency theory." (quoting Barone, 25 F.3d at 615 (citation omitted)).) State Farm had no opportunity to respond to the theory. Moreover, under this court's local rules, Watts Water Technologies may be deemed to have forfeited the issue by withholding it from its opening brief. See NECivR 7.1(a)(1)(A) ("A party's failure to brief an issue raised in a motion may be considered a waiver of that issue."). In short, Watts Water Technologies' "alter go" argument is not properly before me.

In any event, it seems to me that Watts Water Technologies' argument is not supported by the record. First, in support of its description of "the hierarchy and structure of the Watts family of companies," Watts Water Technologies refers me to certain pages of its 2012 Form 10-K. (Def.'s Reply Br. at 2, ECF No. 20 (citing Def.'s Reply Index, Ex. A, ECF No. 21-1).) Because the Product allegedly failed in 2011, however, it is not clear that the companies' 2012 hierarchy is relevant. See, e.g., Pecoraro v. Sky Ranch For Boys, Inc., 340 F.3d 558, 562 (8th Cir.2003) ("Minimum contacts must exist either at time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit."). Second, in support of its claim that Taizhou manufactured the Product at issue in this case, Watts Water Technologies cites pages from depositions that were

taken in other cases. (Def.'s Reply Index, Exs. B-C, ECF No. 21-1.) I have studied these pages, and they simply do not establish that the particular Product at issue in the instant case was manufactured by Taizhou and not by Watts Water Technologies.[1] Third, Watts Water Technologies has submitted no evidence describing the degree of control and domination (or lack thereof) that it has over its alleged subsidiaries. Thus, its claim that State Farm cannot "pierce the corporate veil" is hollow.[2]

In summary, after considering the nature and quality of Watts Water Technologies' contacts with Nebraska, the relation of State Farm's cause of action to those contacts, Nebraska's general interest in providing a forum for its residents, and other relevant factors, I find that: 1) Watts Water Technologies purposefully established minimum contacts with Nebraska by placing the Product in the stream of commerce knowing that it would find its way to Nebraska, and 2) the assertion of personal jurisdiction over Watts Water Technologies comports with fair play and substantial justice.

---

[1] It also bears repeating that State Farm has presented evidence suggesting that Watts Water Technologies manufactured and distributed the Product in Nebraska under the brand "Watts," (see Pl.'s Br., Exs. A-D, ECF No. 17), and at this stage I must view the facts in the light most favorable to State Farm and resolve all factual conflicts in its favor, e.g., Epps, 327 F.3d at 647.

[2] I note in passing that although Watts Water Technologies asserts that "the only way it could potentially be liable for damages caused by the subject products is through an alter ego/piercing the corporate veil argument," (Def.'s Reply Br. at 4, ECF No. 20), in fact there is no "bright-line rule . . . under which, when asking whether assertion of personal jurisdiction over a parent corporation comports with due process, the activities of the parent's subsidiary must be entirely disregarded unless the subsidiary's corporate veil can be pierced under state law," Anderson v. Dassault Aviation, 361 F.3d 449, 452 (8th Cir. 2004).

**IT IS ORDERED** that Watts Water Technologies' motion to dismiss, (ECF No. 11), is denied. For docket management purposes, the clerk of the court may consider State Farm's objection to Watts Water Technologies' motion to dismiss, (ECF No. 16), to be sustained; the objection should no longer appear on the docket sheet as a separate pending motion.

Dated July 3, 2013.

BY THE COURT

_____
Warren K. Urbom
United States Senior District Judge