IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, as Subrogee of, | ) ) ) ) | 4:13CV3037 |
| | ) | MEMORANDUM AND ORDER ON WATTS WATER TECHNOLOGIES' MOTION FOR RECONSIDERATION AND REQUEST FOR HEARING |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| WATTS WATER TECHNOLOGIES, INC., | ) ) ) | |
| Defendant. | | |

On July 3, 2013, I entered an order denying Watts Water Technologies, Inc.'s (Watts Water Technologies') motion to dismiss the complaint for lack of personal jurisdiction. (See generally ECF No. 27.) Watts Water Technologies has filed a motion requesting that I reconsider the order and schedule an evidentiary hearing on the issue of personal jurisdiction. (ECF No. 32.) I have reconsidered the order, and I am not persuaded that it ought to be modified. However, Watts Water Technologies' request for a hearing will be granted in part.

## I.   BACKGROUND

On January 22, 2013, State Farm Fire and Casualty Company a/s/o James Langtry (State Farm) filed a two-count complaint against Watts Water Technologies, Inc. (Watts Water Technologies); Interline Brands, Inc. (Interline); and Linx Ltd. (Linx). (See Notice of Removal, Ex. A, Compl., ECF No. 1-1.) State Farm's claims against Interline and Linx have been dismissed, (see ECF No. 28), but its claims against Watts Water Technologies remain to be resolved.

The complaint alleges that State Farm issued an insurance policy covering the residence and personal property of James Langtry in Lincoln, Nebraska. (Notice of Removal, Ex. A, Compl. ¶¶ 1, 3, ECF No. 1-1.) Langtry used "a 12 [inch] DuraPro® stainless steel braided supply line equipped with a 3/8 [inch] nickel-plated brass compression nut and crimp sleeve fitting" (the Product) to connect a toilet to a water supply line at his residence. (Id. ¶¶ 7-8.) The Product was allegedly designed, distributed, and manufactured by Watts Water Technologies, which is "a foreign corporation doing business in the State of Nebraska." (Id. ¶¶ 5, 7.) On January 17, 2011, the product failed and caused Langtry's residence to be flooded with water. (Id. ¶¶ 9, 15, 20.) State Farm seeks to hold Watts Water Technologies liable for Langrty's damages on theories of negligence and strict liability. (See id. ¶¶ 11-21.)

On March 26, 2013, Watts Water Technologies moved to dismiss the complaint for lack of personal jurisdiction, arguing that "there are not sufficient minimum contacts between Watts Water [Technologies] and the State of Nebraska." (Mot. to Dismiss at 1-2, ECF No. 11.) Watts Water Technologies supported its motion with an affidavit signed by Kristen Hoffman, who serves as Watts Water Technologies' Corporate Tax Manager. (See Def.'s Index of Evidence, Ex. 1, ECF No. 13-1.) Hoffman's affidavit states that Watts Water Technologies is a Delaware corporation with its principal place of business in Massachusetts; that it has never been a Nebraska corporation; that it has never been registered to do business in Nebraska; that it has no registered agent in Nebraska; that it has never paid taxes in Nebraska; that it owns no property in Nebraska; that it has no branches or offices in Nebraska; and that it has never had phone listings or bank accounts in Nebraska. (Def.'s Index, Ex. 1 Hoffman Aff. ¶¶ 3-4, ECF No. 13-1.) In addition, Hoffman's affidavit states that Watts Water Technologies "did not manufacture, process, service, distribute, or sell" the Product; "does not manufacture, process, service, distribute, or sell any

coupling nuts or water supply lines"; and "does not manufacture, process, service, distribute, or sell any products in Nebraska." (Id. ¶¶ 5-6.) In response to the motion, State Farm presented evidence indicating that 1) Watts Water Technologies did manufacture the Product, and 2) Watts Water Technologies used "a robust distribution network to deliver its products into the stream of commerce with the expectation that the products would be purchased by consumers in the forum state." (Pl.'s Response Br. at 1-2, ECF No. 17.) After studying the evidence, I concluded that State Farm made a prima facie showing of jurisdiction under the "stream of commerce theory," even though there was no dispute that Watts Water Technologies had no office, property, or agents in Nebraska. (See Mem. & Order on Mot. to Dismiss at 7-8, ECF No. 27.)

In its reply brief, Watts Water Technologies argued that its motion to dismiss should be granted because the Product was manufactured by a corporate subsidiary whose contacts with Nebraska cannot be attributed to Watts Water Technologies. (See generally Def.'s Reply Br., ECF No. 20.) I rejected this argument, explaining that even if I were to assume that the argument was properly before me,[1] it was not supported by the evidence in the record. (See id. at 9-10.)

On July 19, 2013, Watts Water Technologies filed a motion for reconsideration and an amended motion for reconsideration of my July 3, 2013, order. (ECF Nos. 30, 32.) Citing Federal Rules of Civil Procedure 54(b) and 59(e), Watts Water Technologies asks that I reconsider my decision to deny its motion to dismiss and schedule an evidentiary hearing to "fully develop[]" the issues. (See ECF Nos. 30,

---

[1] I noted that Watts Water Technologies' failure to raise this argument in its opening brief was not consistent with this court's local rules and deprived State Farm of an opportunity to respond. (See Mem. & Order on Mot. to Dismiss at 8-9, ECF No. 27.)

32.)

## II.   STANDARD OF REVIEW

This court "has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." K.C.1986 Ltd. Partnership v. Reade Manufacturing, 472 F.3d 1009, 1017 (8th Cir. 2007) (quoting Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1070 (8th Cir. 1995)).  Also, Federal Rule of Civil Procedure 54(b) provides that when an order does not resolve all claims in an action, and the district court has not directed entry of a final judgment as to the relevant claim or claims, the order "is subject to revision at any time before the entry of final judgment." K.C. 1986 Ltd. Partnership, 472 F.3d at 1017.  See also Fed. R. Civ. P. 54(b).

## III.   ANALYSIS

Preliminarily, I note that Watts Water Technologies' first motion for reconsideration, (ECF No. 30), will be denied as moot in light of its filing of an amended motion for reconsideration.

Watts Water Technologies argues first that State Farm "has persuaded the Court to take a position that goes beyond construing facts in Plaintiff's favor and instead amounts to impermissible burden-shifting." (Def.'s Br. in Supp. of Am. Mot. for Reconsideration (hereinafter "Def.'s Br.") at 4, ECF No. 33.)  I agree with Watts Water Technologies that "after jurisdiction has been controverted by the opposing party, 'the plaintiff bears the burden of proving facts supporting personal jurisdiction.'" (Mem. & Order on Mot. to Dismiss at 2, ECF No. 27 (quoting Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090 (8th Cir. 2008)).)  State Farm was not relieved of this burden; rather it submitted evidence sufficient to make a prima

facie showing of jurisdiction, which discharged its burden. (See id. at 2 ("The plaintiff 'need[] only make a prima facie showing of jurisdiction' to satisfy this burden." (quoting Miller, 528 F.3d at 1090)); see also id. at 6-8 (summarizing State Farm's evidence that permitting a reasonable inference that Watts Water Technologies manufactured the Product and purposefully directed its business activities at the residents of Nebraska).) Simply put, State Farm was held to its burden of proving facts supporting the exercise of personal jurisdiction over Watts Water Technologies.

Second, Watts Water Technologies argues that State Farm's evidence was not sufficient to make a prima facie showing of jurisdiction. (Def.'s Br. at 4-5, ECF No. 33. See also id. at 11.)

To make its prima facie showing of jurisdiction, State Farm submitted a copy of Watts Water Technologies' 2011 Securities and Exchange Commission (SEC) Form 10-K, which states that Watts Water Technologies seeks to be "the leading provider of water quality, water conservation, water safety and water flow control products for the residential and commercial markets in North America"; that Watts Water Technologies has a product line of "[r]esidential and commercial flow control products," which "includes products typically sold into plumbing and hot water applications"; that Watts Water Technologies uses "commissioned manufacturers' representatives, some of which maintain a consigned inventory of [Watts Water Technologies'] products," who sell those products to plumbing wholesalers or service DIY store locations in North America"; and that Watts Water Technologies "also sell[s] products for the residential construction and home repair and remodeling industries through DIY plumbing retailers, national catalog distribution companies, hardware stores, building material outlets and retail home center chains and through plumbing and heating wholesalers." (See Mem. & Order on Mot. to Dismiss at 6-7,

ECF No. 27 (quoting Pl.'s Br., Ex. D at 2-4, ECF No. 17).) The SEC Form 10-K also includes a description of Watts Water Technologies' "manufacturing capabilities." (See Pl.'s Br., Ex. D at 2-4, ECF No. 17.) In addition to the SEC Form 10-K, State Farm submitted documents showing that "Watts: A Watts Water Technologies Company" produces ten different series of connectors, including four different series of water supply connectors for toilets. (See Mem. & Order on Mot. to Dismiss at 6, ECF No. 27 (citing Pl.'s Br., Ex. A, ECF No. 17).) It also submitted a document showing that "Watts" has three sales representatives whose territories include the State of Nebraska. (See id. (citing Pl.'s Br., Exs. B-C, ECF No. 17).)

In support of its motion for reconsideration, Watts Water Technologies argues that the SEC Form 10-K merely refers to Watts Water Technologies "and its fully owned subsidiaries as a collective 'we.'" (Def.'s Br. at 5, ECF No. 33.) It adds that State Farm's remaining documents describe products that differ from the particular Product at issue in this case, pertain to a Watts Water Technologies subsidiary (rather than Watts Water Technologies itself), and/or identify a relatively small number of sales representatives who market "Watts water products to industry professionals (and not home owners)" in Nebraska. (Id.) In short, it submits that State Farm's "documents do not establish that Watts Water Technologies itself manufactured, distributed, or sold anything," and that "the Court erred in determining they do." (Id. at 11. See also Def.'s Reply Br. at 2-3, 4, ECF No. 43.)

I agree that State Farm's evidence does not prove that Watts Water Technologies manufactured the Product, marketed it in Nebraska, and sold it in Nebraska using a network of sales representatives. However, at this stage of the proceeding–when discovery has yet to commence–State Farm is not required to prove jurisdiction by a preponderance of the evidence. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991) ("While it is true that the

plaintiff bears the ultimate burden of proof on this issue, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." (citation omitted)). Instead, "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." Id. (See also Mem. & Order on Mot. to Dismiss at 2, ECF No. 27 (quoting Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090 (8th Cir. 2008)).) Moreover, "[i]f the district court does not hold a hearing and instead relies on pleadings and affidavits, as . . . here, the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." Dakota Indus., Inc., 946 F.2d at 1387 (citations omitted).

  I have considered and reconsidered all of the parties' arguments and exhibits. Viewing the record in the light favorable to State Farm and resolving all factual conflicts in its favor, I find that the evidence supports a reasonable inference that Watts Water Technologies manufactured the Product, placed it into a distribution network that encompassed Nebraska, and ultimately sold it in Nebraska. (See Mem. & Order on Mot. to Dismiss at 7, ECF No. 27 ("State Farm's documents permit a reasonable inference that Watts Water Technologies manufactured the Product and purposefully directed its business activities at the residents of Nebraska by selling the Product through a network of commissioned representatives that covers Nebraska.").) This is sufficient to satisfy State Farm's burden at this stage of the proceeding, though it remains to be determined whether State Farm can ultimately prove the facts necessary to support personal jurisdiction by a preponderance of the evidence. To be clear, personal jurisdiction is not "established" in the sense that the issue is resolved for the purposes of this action. The facts alleged merely make a prima facie case of

personal jurisdiction.[2]

Relatedly, Watts Water Technologies emphasizes that when discussing State Farm's evidence, I used the following qualifying language: "State Farm refers me to a fourteen page set of documents that appear to show that 'Watts,' which is described as 'A Watts Water Technologies Company,' has produced . . . four series of water supply connectors for toilets"; "State Farm also refers me to exhibits purporting to show that 'Watts' maintains a list of 37 sales representatives, three of which list Nebraska as their 'territories'"; and "State Farm has submitted a document that appears to be a four-page excerpt from Watts Water Technologies' 2011 [SEC] Form 10-K." (Def.'s Br. at 11, ECF No. 33 (quoting Mem. & Order on Def.'s Mot. to Dismiss at 6, ECF No. 27 (emphasis added)).) These qualifying words reflect the fact that State Farm did not provide an affidavit authenticating its exhibits. See NECivR. 7.1(b)(2)(C). As I noted in my memorandum and order, however, Watts Water Technologies did not dispute the documents' authenticity. (See Mem. & Order on Def.'s Mot. to Dismiss at 7, ECF No. 27.) In the brief supporting its amended motion for reconsideration, Watts Water Technologies has confirmed that the documents are authentic. (See, e.g., Def.'s Br. at 5, ECF No. 33 ("Watts Water Technologies did not refute the authenticity of these documents because it cannot and need not.").) This concession renders moot the qualifying language highlighted above.

Watts Water Technologies argues next that the "stream of commerce" theory of personal jurisdiction relied upon by State Farm is no longer viable in the wake of Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480

---

[2] In its brief, Watts Water Technologies states repeatedly that there is no dispute that it did not design, manufacture, label, sell, market, or distribute the Product. (See Def.'s Br. at 3, 7, 9, ECF No. 33.) As the foregoing discussion illustrates, this claim is refuted by the record, and it merits no further discussion.

U.S. 102 (1987), and J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780 (2011), and therefore my order is "not in accord with governing legal precedent." (Def.'s Br. at 5, ECF No. 33 (emphasis omitted). See also id. at 6-8.) It is not clear why Watts Water Technologies failed to raise this argument in the reply brief supporting its motion to dismiss. (See generally ECF No. 20.) In any event, the Eighth Circuit has specifically rejected the notion that Asahi undermined this circuit's application of the stream of commerce theory. See Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 613-614 (8th Cir. 1994). Also, although the Eighth Circuit has yet to address the question specifically, two other circuit courts of appeals have held that Nicastro's holding is limited to the specific facts before the Court, and that Nicastro did not alter the stream of commerce theory of personal jurisdiction. See Ainsworth v. Moffett Engineering, Ltd., 716 F.3d 174, 176, 177-79 (5th Cir. 2013); AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1363 (Fed. Cir. 2012) ("Because McIntyre did not produce a majority opinion, we must follow the narrowest holding among the plurality opinions in that case. Marks v. United States, 430 U.S. 188, 193, 97 S. Ct. 990, 5 L. Ed. 2d 260 (1977). The narrowest holding is that which can be distilled from Justice Breyer's concurrence–that the law remains the same after McIntyre."). I am not persuaded that the stream of commerce theory, as it has been applied by the Eighth Circuit, is no longer viable. See e.g., Barone, 25 F.3d at 613; Vandelune v. 4B Elevator Components Unlimited, 148 F.3d 943, 947-48 (8th Cir. 1998); Clune v. Alimak AB, 233 F.3d 538, 542-45 (8th Cir. 2000).[3]

---

[3] I note parenthetically that Justice Breyer's concurrence in Nicastro, which requires "something more" than merely placing a product in the stream of commerce, "such as special state-related design, advertising, advice, marketing, or anything else," see Nicastro, 131 S. Ct. at 2792 (Brennan, J., concurring in the judgment), appears to be consistent with the Eighth Circuit's requirement that the foreign company do "more than set a product adrift in the . . . stream of

Nor am I persuaded that I have misapplied the theory in this case. Watts Water Technologies argues that Barone and Vandelune are distinguishable from the instant case because "Watts Water Technologies is not a manufacturer." (Def.'s Br. at 7, ECF No. 33.) As noted above, however, State Farm has made a prima facie showing that Watts Water Technologies did manufacture the Product. At this stage of the proceeding, I am not to weigh the parties' evidence and resolve factual conflicts. Because State Farm's evidence supports a reasonable inference that Watts Water Technologies manufactured the Product and purposefully established minimum contacts with Nebraska, Watts Water Technologies' motion to dismiss must be denied.

Next, Watts Water Technologies states that my decision to disregard its "alter ego"/agency argument was the product of several errors. (Def.'s Br. at 8-10, ECF No. 33.) This line of argument is moot. Although it is true that in the memorandum and order of July 3, 2013, I explained that Watts Water Technologies' alter ego/agency argument was not properly raised in its reply brief, (see Mem. & Order on Mot. to Dismiss at 8-9, ECF No. 27), I proceeded to analyze the argument and found that it was not supported by the record, (see id. at 9-10). Nevertheless, Watts Water Technologies' claims merit brief responses.

Watts Water Technologies states that although it did raise its "alter ego"/agency argument for the first time in its reply brief, it cannot be said that State Farm had no opportunity to respond because it "could certainly have requested leave of Court to file a surreply if it desired an opportunity to respond." (Def.'s Br. at 8,

---

commerce," Clune, 233 F.3d at 538. In any event, State Farm has submitted evidence showing plausibly that Watts Water Technologies directed sales and marketing activity at Nebraska, which satisfies Justice Breyer's requirement of "something more."

ECF No. 33.) It is true that a party may attempt to obtain leave to file additional briefs, see NECivR 7.1(c), but the local rules state that a party's failure to address an issue in the brief accompanying its motion "may be considered a waiver of that issue," NECivR 7.1(a)(1)(A). The rules clearly do not favor the tactic of reserving known issues for reply briefs and forcing opponents to request leave for further briefing.

Watts Water Technologies adds that because State Farm failed to plead the stream of commerce theory in its complaint, Watts Water Technologies could not have guessed that State Farm intended to rely on that theory. It continues, "[T]he Court seems to have turned [the] burden of proof on its head when it determined that Watts Water Technologies should not have argued agency issues in its Reply brief." (Id. at 8. See also id. at 9 ("Watts Water Technologies raised this 'alter ego' problem for the first time in its Reply brief because then, and only then, was it apparent that Plaintiff was relying on a stream of commerce theory." (emphasis in original)).) As explained in the memorandum and order of July 3, 2013, the alter ego/agency theory is "conceptually separate" from the question of whether a foreign corporation has established minimum contacts under the stream of commerce theory. (Mem. & Order on Mot. to Dismiss at 8-9, ECF No. 27 (quoting Viasystems, Inc. v. EMB-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 596 (8th Cir. 2011)).) Thus, it cannot be said that any deficiency in the complaint's allegations concerning the stream of commerce theory[4] had any connection with Watts Water Technologies' failure to raise

---

[4] I note in passing that the complaint alleges that Watts Water Technologies was a foreign corporation doing business in Nebraska; that it sold, designed, distributed, and manufactured the Product; and that it distributed and sold the Product into Nebraska. (See Notice of Removal, Ex. A, Compl. ¶¶ 5, 7, ECF No. 1-1.) To the extent that Watts Water Technologies argues that the complaint fails to allege sufficient facts to support personal jurisdiction under the stream of

the separate issue of alter ego/agency in its opening brief.

Finally, Watts Water Technologies explains that it "legitimately asserted in its Reply brief that even if Plaintiff amended its complaint to name a proper defendant, jurisdiction over that defendant would not automatically confer jurisdiction over Watts Water Technologies and any attempt to do so would likely fail" given that "jurisdiction over a subsidiary corporation does not, in and of itself, grant jurisdiction over the parent corporation, even if the parent corporation owns all of the subsidiary's stock." (Def.'s Br. at 10-11, 13, ECF No. 33. See also Def.'s Reply Br. at 4, ECF No. 43.) It adds that it "did not anticipate that the Court would entirely disregard the corporate form." (Def.'s Br. at 11, ECF No. 33.) As noted above, Watts Water Technologies' "corporate form" was not disregarded; rather, I found that Watts Water Technologies failed to submit any evidence establishing its corporate structure at relevant times. (Mem. & Order on Mot. to Dismiss at 9-10, ECF No. 27.) Moreover, as State Farm has not yet attempted to add any additional defendants, there is presently no need to determine whether "any attempt to do so would likely fail." (Def.'s Br. at 11, ECF No. 33.)

Watts Water Technologies' reply brief in support of its motion for reconsideration is accompanied by a copy of a Florida court's decision "denying personal jurisdiction over Watts Water Technologies . . . in an action nearly identical in all material respects to the one at hand." (Def.'s Reply Br. at 4-5, ECF No. 43. See also Def.'s Notice of Supp. Authority, Order, ECF No. 44-1.) As Watts Water Technologies acknowledges, the Florida court determined, following an evidentiary hearing, that "the evidence presented by the parties [did] not establish that Watts Water [Technologies] conducted any activity which would subject it to the long-arm

---

commerce theory, (see Def.'s Br. at 10, ECF No. 33), its argument is rejected.

jurisdiction of this court [under Florida law], nor does it have sufficient minimum contacts with the State of Florida to satisfy due process requirements." (Def.'s Notice of Supp. Authority, Order at 2, ECF No. 44-1. See also Def.'s Reply Br. at 5, ECF No. 43.)[5] The evidence that was before the Florida court is not before me. Even if it were, there has been no evidentiary hearing; thus, I would continue to be obliged to resolve the conflict in the evidence in State Farm's favor. In short, the Florida decision does not aid my analysis of Watts Water Technologies' motion to dismiss.

Watts Water Technologies asks that "this matter be scheduled for a hearing at [the court's] earliest convenience." (Def.'s Br. at 12, ECF No. 33. See also Am. Mot. for Reconsideration at 1-2, ECF No. 32.) This request is granted in part. The parties are directed to confer and determine a hearing date and, if necessary, an expedited discovery schedule (with discovery limited to personal jurisdiction issues). Within fourteen days of the date of this order, the parties are to submit a joint proposed order addressing these matters. If an agreement cannot be reached, State Farm is directed to file a motion for a hearing. This motion must be filed within fourteen days of today's date, and it may include a request for discovery on the issue of personal jurisdiction.

**IT IS ORDERED** that:

---

[5] Also, in contrast to the instant case, the plaintiff in the Florida case alleged that Watts Water Technologies, Watts Regulator Company (Watts Regulator), and Watts Plumbing Technologies (Taizhou) Co., Ltd. (Watts Plumbing) were "alter egos of one another and that each is responsible for the misdeeds of the others." (Def.'s Notice of Supp. Authority, Order at 1-2, ECF No. 44-1.) The Florida court determined that the plaintiff's allegations failed to "state any specific basis for the assertion that [the companies] are alter egos," but it granted the plaintiff "leave to pursue limited discovery to establish whether minimum contacts exist to allow in personam jurisdiction over [Watts Regulator and Watts Plumbing] and to determine the Watts entity responsible for the sale and distribution of parts in Florida." (Id. at 3, 4.)

1. Watts Water Technologies' motion for reconsideration, (ECF No. 30), is denied as moot.

2. Watts Water Technologies' amended motion for reconsideration, (ECF No. 32), is denied.

3. Watts Water Technologies' request for a hearing, (ECF No. 32), is granted in part.

4. A hearing will be held on the question of personal jurisdiction. Within fourteen days of the date of this order:

   a) the parties must submit a proposed order that includes an agreed-upon hearing date and, if necessary, a proposed expedited discovery schedule; or

   b) if the parties cannot reach an agreement on these matters, State Farm must file a motion for a hearing. This motion may also include a request for expedited discovery on the issue of personal jurisdiction.

Dated September 18, 2013.

BY THE COURT

_____

Warren K. Urbom
United States Senior District Judge